## Booth v. Akin.

(Decided June 15, 1920.)

### Appeal from Caldwell Circuit Court.

Quieting Title—Possession of Plaintiff.—In this action quia timet, the question for decision being whether the small strip of ground in controversy is a part of a city lot sold and by deed conveyed appellee by appellant, the lines and corners of which were measured and fixed by the latter before delivery of the possession of the lot to the former, the evidence being sufficient to authorize the finding of the chancellor that the lines and corners of the entire lot conveyed, as thus laid off and fixed by the appellant, accord with those of the adjoining lots called for in the deed and include the ground in controversy. Held, that his judgment declaring appellee the owner under the deed from appellant of the ground in controversy, quieting his title thereto and enjoining appellant from erecting a fence for the purpose of depriving him of it, properly determined the rights of the parties.

JOHN G. MILLER for appellant.

J. E. BAKER for appellee.

OPINION OF THE COURT BY JUDGE SETTLE—Affirming.

In this action, brought in equity, is involved the title and right to the possession of a small strip of ground in the city of Princeton particularly described in the petition, of which the appellee, J. A. Akin, claims to be the owner and in possession; and to which ownership and the right of possession are likewise claimed by the appellant, Mrs. Kate G. Booth. The petition, as amended, in substance alleges appellee's title to and possession of the ground in controversy; appellant's wrongful claim of title to same and to the possession thereof; her attempt to inclose it by a fence for the purpose of adding it to an adjoining lot of which she is the owner; and that by this alleged trespass to the property, and her wrongful claiming of title thereto she had unlawfully interfered with his possession and enjoyment thereof and cast a cloud upon his title to same. By the prayer of the petition an injunction was asked to restrain appellant from completing the fence inclosing the ground in controversy, otherwise trespassing thereon, or setting up claim thereto; and, further, that appellee's title to the property be quieted.

The appellant's answer admits the appellee's ownership under a deed of conveyance from her, of a 25 foot

lot immediately adjoining the strip of ground in controversy, but denies his title to the strip of ground, any right in him to the possession thereof, or to the injunctive or other relief prayed in the petition; and alleged such title and right of possession in herself. After completing the issues by the filing of further pleadings by way of response and the entering of orders controverting some of them of record, the cause was submitted under an agreement of the parties, also entered of record, by which the evidence introduced by them, respectively, was received by the circuit court through the oral testimony of the several witnesses, instead of in the form of depositions as required by the rule of practice obtaining with respect to actions in equity. The evidence thus heard in the case is contained in a bill of exceptions approved and signed by the circuit court and made a part of the record. By the decree rendered that court adjudged appellee the owner of the strip of ground described in the petition, permanently enjoined appellant from erecting a fence or other structure thereon, or in any way interfering with the appellee's use or enjoyment thereof, and gave appellee judgment against appellant for his costs expended in the action. The latter complains of the judgment and by this appeal seeks its reversal.

While the judgment of the circuit court does not in terms expressly declare appellee's title to the ground in controversy quieted, such is clearly its meaning and legal effect. Indeed the entire relief sought by the petition is such as appertains alone to an action *quia timet*. The map here furnished, substantially reproduced from one contained in the bill of evidence as a part of the testimony of a competent surveyor by whom it was made, will give a fairly accurate description of the lot of which the strip of ground in controversy is a part and of the several lots and streets adjoining it; also the location and dimensions of the strip in controversy and the lines and objects by which, according to the respective contentions of the litigants, its ownership should be determined.

May 13, 1915, appellee at the agreed price of $1,500.00, cash in hand paid, purchased of appellant a lot of 25 feet in width its entire depth of 127 feet. As shown by the map this lot lies between a lot on the east of it owned by appellee, upon which he has resided

many years, the lot of the Methodist Episcopal Church, south of appellee's lot, and on the west its full depth by a lot yet owned by appellant. The lot also fronts on Main street and extends to an alley south of it which runs east and west from Seminary street to Cave street. On the date of its purchase by appellee the lot was conveyed him by a deed from the appellant which was duly acknowledged and put to record. The lot is thus described in the deed: ''A certain lot, piece or parcel of ground, situated, lying and being in Prince's addition to the city of Princeton, Caldwell county, Ky., and described as follows: Beginning at the northwest corner of a lot of ground now owned by Dr. J. A. Akin (appellee) on the south side of Main or College street, thence with the south side of said Main or College street 25 feet to a stake or stone, thence south across a lot of ground of Mrs. Katie G. Booth (appellant) 127 feet to the north side of an alley, thence east with the north side of said alley 25 feet to the M. E. Church house lot,

thence north with the west line of the M. E. Church lot and also with the west line of Dr. J. A. Akin's lot to Main street, the beginning. This being 25 feet off of the eastern lot of the same piece or lot of ground as conveyed by Wiley Jones and wife to Mrs. Katie G. Booth by deed dated November 2, 1908, now of record in D. B. No. 29, page 606-607, Caldwell county court clerk's office."

It conclusively appears from the above deed made by appellant to appellee that the lot as described therein has a width of 25 feet from front to rear and was sold and conveyed from the eastern side of appellant's lot shown on the map as fronting on Main street and which, as an orginal whole, was conveyed her November 2, 1908, by Wiley Jones and wife, and that its eastern boundary from the alley to Main street runs with the west line of the Methodist Episcopal church lot and that of the lot upon which appellee resides. In the deed from Jones and wife to appellant, a copy of which appears in the record, the entire lot conveyed her is described as lot No. 45 in Prince's addition to the city of Princeton, that it fronts Main street 117 feet and runs back east of Cave street 127 feet to an alley, and is what remained of a lot after the conveyance of a part of it by deed from Jones and wife to M. J. Groom and wife made August 21, 1907.

It also appears from a deed found in the record from M. J. Groom and wife to appellee, by which the lot whereon the latter resides was conveyed him January 31, 1908, that it is therein described as the northern half of lot 39 in Prince's addition to the city of Princeton, fronting 110 feet on Main street, extending back west of Seminary street 67 feet to the M. E. Church lot. It further appears from a deed of date June 6, 1878, from M. A. Mays, president of the board of trustees of Princeton Seminary, conveying to Jas. F. Ingram and others, trustees of the M. E. Church South, Princeton, the lot occupied by its church building, that the lot is simply described as "situated in Prince's addition to said town and is the entire southern half of lot No. 39 in said addition and the same upon which now stands the seminary building."

The boundary of the 25 foot lot conveyed appellee by the deed from appellant as claimed by the former is shown on the map as beginning on Main street at

figure "1" the northwest corner of the lot on which appellee resides; thence west with the south side of Main street 25 feet to a stake or stone at figure "2" on the south line of Main street; thence south 127 feet to the north side or line of an alley at figure "3;" thence east with the north side or line of the alley 25 feet to the west line, or southwest corner, of the M. E. Church lot at figure "4" on the north line of the alley; thence north with the west line of the M. E. Church lot and also with the west line of appellee's residence lot (the entire distance being 127 feet) to the beginning on Main street at figure "1."

The boundary of the lot as given above accords with that contained in the deed by which it was conveyed appellee by appellant. We do not find that appellant complains of any error in the boundary of the lot as set forth by the deed, but she insists that the west line thereof extending from Main street south to the alley properly intersects it at the letter "A" on the map, and if correctly run eastwardly a distance of 25 feet from where it reaches the north side of the alley at "A," will intersect the west line and corner of the M. E. Church lot at the letter "B" a point two or two and one-half feet beyond and east of where appellee claims and the map shows the point of intersection to be. It will thus be seen that the ground in controversy is a narrow strip only two or two and a half feet in width at the rear or south end of the lot which as it extends northward lessens so rapidly in width as to become practically infinitesimal in dimension and value long before the front of the lot is reached.

While the deed by which appellant conveyed appellee the 25 foot lot does not mention the fact, it appears from the evidence and is admitted by appellant, that at the time of its execution one Frank Cash, a tenant of appellant, was in possession of the lot under a lease which did not expir until some time in April, 1918, and under the terms of his purchase of the property appellee did not get possession of it until the lease terminated. But before putting him in possession of the lot appellant, as seems to have been agreed by the parties when it was sold, in person measured, laid off and designated its boundary assisted by appellee who acted in the matter at her request; she in doing the measuring holding one end of the tape line and he the other. In per-

forming this work appellant determined all lines, fixed all corners and directed the driving of such stakes as were used in designating them.

By this action of appellant the lines and corners of the lot in question admittedly were laid off and fixed as indicated by the figures "1," "2," "3" and "4" shown on the map, and as thus fixed appellant delivered to appellee the possession of the property, immediately removed therefrom, as provided by the contract of sale, a building which had been used by her former tenant Cash and proceeded to erect a fence separating the lot sold from the lot retained by her which was built on the line running, as previously measured and fixed by her, from "2" to "3" as indicated on the map. Later, however, appellant seemed to conceive the idea that she had set her fence too far west, commenced the digging of new post holes and to remove the fence farther east so as to make it reach the alley at the letter "A" instead of the figure "3," thereby depriving appellee, as claimed, of two to two and one-half feet of the 25 foot lot she had conveyed him. This conduct on the part of appellant caused appellee to institute the present action.

Without entering upon a discussion in detail of the evidence found in the record or undertaking an analysis of the testimony of any of the numerous witnesses, we deem it sufficient to say that we have reached the conclusion that the judgment of the chancellor is supported by the weight of the evidence. It is manifest that in order to determine where the west line of the lot conveyed appellee by appellant should reach or intersect the alley south of the lot, the point of intersection must be ascertained by measuring by the calls of the deed along the north line of the alley a distance of 25 feet from the west line of the M. E. Church lot, the corner of which, according to the great weight of the evidence, is at the point on the alley represented by the figure "4" on the map, where there is a cedar post recognized, as shown by the evidence, for more than twenty-five years as the southwest corner of the church lot; in addition to the existence of this cedar post, the place where it stands was recognized as the corner of the church lot from 1878, the date of the deed conveying the lot to the trustees of the church, down to the erection of the cedar post and attached fence by the church.

It is true appellant and certain of her witnesses, testified to the presence of another cedar post somewhat farther north of the alley and 2 or 2½ feet east of a line running north from the cedar post at figure "4," which they believed to be the true corner of the church lot, but this testimony seems to have been successfully contradicted by that of appellee and two other witnesses, officers or members of the church, to the effect that the second cedar post was placed many years after the one on the alley for attaching to it a barrier to prevent the employees of a plant operated on the lot south of the alley from crossing it on to the church lot and using same immediately back of the church, as a privy or urinal the odors of which annoyed those who met in the church for worship. Another potent fact establishing the point at figure "4" as the true location of the church lot corner, is that it gives the line of the church lot from there running east to Seminary street its correct length of 110 feet, corresponding with the length of the south line of appellee's residence lot running the same course. Moreover, by establishing the southwest corner of the church lot at figure "4," makes it end a straight line from Main street to the alley, and likewise seems to make the line from Main street to the alley separating the 25 foot lot from that of appellant a straight line, and gives the 25 foot lot a uniform width of 25 feet from Main street to the alley. Finally, the further fact that the chancellor, in company with the parties to the action, went himself upon the premises, and viewed all ground, lines and corners in dispute for the purpose of satisfying himself of the situation, gives great force to the correctness of the judgment. On the whole we find no ground for disagreeing from his conclusions and the judgment is therefore affirmed.